NOT FOR PUBLICATION                                                                                    (Docket No. 23)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES GEORGE JATRAS and KATHY PAPPAS JATRAS, | : |
| Plaintiffs, | : Civil No. 09-3107 (RBK/KMW) |
| v. | : **OPINION** |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA HOME LOANS, COLLEEN REED, COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE BANK, FSB, COLLEEN REED, LORAINE RAYMER, and OTHER UNDISCOVERED PARTIES, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises out of alleged fraud in the securing of a home mortgage. Presently before the Court is the Motion to Dismiss by Defendants Bank of America Corporation, Bank of America Home Loans, Countrywide Financial Corporation, Countrywide Bank, FSB, Colleen Reed, and Loraine Raymer (Docket No. 23). Defendants' essential argument is that Plaintiffs James George Jatras and Kathy Pappas Jatras have failed to allege any fraud in connection with their home loan. The Court agrees, and for the reasons discussed below, the Motion to Dismiss is granted without prejudice. Plaintiffs are granted leave to amend.

1

I.      BACKGROUND

Because this matter is before the Court on a motion to dismiss, the following facts are taken from the Amended Complaint and assumed true.

Plaintiffs James and Kathy Jatras live in Virginia. Sometime in 2006 they purchased a home in Cape May, New Jersey, subject to financing obtained through Bank of America Home Loans, formerly Countrywide Home Loans. Countrywide Home Loans is a subsidiary of Countrywide Financial Corporation, whose parent company in turn is Bank of America Corporation. Countrywide Home Loans is the loan origination arm of Countrywide Financial Corporation through Countrywide Bank, FSB, which is also a unit of Countrywide Financial Corporation. Colleen Reed is an employee of Countrywide Home Loans in Countrywide's branch office in Mays Landing, New Jersey. Loraine Raymer is an officer, agent, and employee of Defendants Bank of America, Countrywide Home Loans, Countrywide Financial Corporation, and Countrywide Bank, FSB.

Plaintiffs allege that Countrywide Home Loans offered finance programs subject to specific underwriting guidelines. These guidelines were designed to qualify each mortgage transaction based upon criteria that included the borrower's suitability (as determined by income, credit, and assets); market stability; the suitability of collateral; as well as industry standards. After Plaintiffs purchased their home in December 2006, Countrywide Home Loans and Reed purposefully falsified documents in the course of the loan transaction, including omitting information from Plaintiffs' debt-to-income ratio and manipulating the home appraisal to arrive at a pre-determined value. They also purposefully ignored or manipulated internal policies for the purpose of approving the loan. Plaintiffs allege that they were not qualified for the loan and

Defendants knew so, yet forced the transaction through. Plaintiffs later defaulted on the loan, and now are suffering economic harm and loss of credit standing.

On June 24, 2009 Plaintiffs, proceeding pro se, filed the Complaint with this Court. On July 15, 2009, they amended. The Amended Complaint asserts five counts: Count One-Conversion; Count Two-Fraud; Count Three-Consumer Fraud in violation of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-2; Count Four-"Detrimental Reliance"; and Count Five-Civil Racketeer and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(a), (c), and (d). Defendants filed the present Motion to Dismiss on September 3, 2009, and Plaintiffs timely responded.

## II.   STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

### III. DISCUSSION

Defendants move to dismiss each of the five counts of the Amended Complaint.  As to the state law claims, Defendants argue that they should fail because they are really just impermissible "improvident lending claims," and if not, they are separately insufficient under New Jersey law.  As to the RICO claim in Count Five, Defendants lodge myriad reasons why the count is insufficient as a matter of law, most of which distill to a failure to plead with requisite specificity, or pleading with only naked legal assertions.  Plaintiffs respond that many of the state law claims are sufficient–though noticeably they failed to respond regarding two entire counts–and respond that they can state a RICO claim with leave to amend.  The Court is compelled to grant the Motion, but will grant leave to amend.

#### A. State Law Claims

Though Defendants first challenge the RICO claim in Count Five, for purposes of analysis, beginning with Plaintiffs' fraud claim (which pervades every count of the Amended Complaint) makes analytical sense as it controls the subsequent analysis.  But before getting to the heart of that claim, the Court must address Defendants' omnibus challenge to all of the state law claims.  Defendants argue that each state law claim is faulty because they are premised on a theory of "improvident lending," which New Jersey does not recognize.  Def. br. at 14.  Plaintiffs

4

did not directly respond to Defendants' initial challenge, but rather asserted the sufficiency of the fraud claim and the consumer fraud claim (ignoring the conversion claim and the "detrimental reliance" claim). Pl. br. at 11, 21. The Court disagrees with Defendants' initial challenge.

To be sure, New Jersey courts have never recognized a claim for improvident lending, see Lind v. New Hope Property, LLC, No. 09-3757, 2010 WL 1493003, at *5 n.8 (D.N.J. Apr. 13, 2010), and at least one court has predicted that the New Jersey Supreme Court would not recognize such a claim if presented. In re Fedders N. Am., Inc., 405 B.R. 527, 551 (Bankr. D. Del. 2009). However, even if so, this does not mean that *any* claim involving improvident lending is faulty. Indeed, the Fedders court discusses the shortcomings of improvident lending as a cause of action in and of itself, but goes on to conclude that other common law remedies adequately cover any injury a plaintiff suffers in a lending context. Id. at 551-52 ("[T]he Court believes [the New Jersey Supreme Court] would recognize that other remedies, such as aiding and abetting breach of fiduciary duty, lender liability premised on contractual rights (including the implied covenant to act in good faith), common law fraud, and the law of fraudulent transfer serve to adequately protect the interests of those who deal with lenders."). In other words, improvident lending as a count or claim in a civil action cannot be sustained, but whatever tortious acts that give rise to what could otherwise be styled as an improvident lending claim *are* actionable. Thus, merely because Plaintiffs' common law claims involve a loan allegedly improperly given does not mean that the claims are suspect per se. Therefore the Court cannot grant Defendants' Motion on this ground.

But this conclusion does not end the inquiry, and the analysis now turns to the heart of Plaintiffs' Amended Complaint–fraud.

### 1. Fraud

Defendants challenge Plaintiffs' common law fraud claim on several fronts, but basically insist that Plaintiffs have failed to plead a misrepresentation or justifiable reliance. Def. br. at 18-20. Plaintiffs' essential response is that they have pled a claim because Defendants intentionally underreported Plaintiffs' debt-to-income and produced a false appraisal showing the house was sufficient collateral. Pl. br. at 13-14. Alternatively, they posit that Defendants violated their own internal polices to qualify Plaintiffs for the loan, which was also fraudulent. Pl. br. at 16. In the Court's view, none of these allegations are sufficient to state a claim for fraud.

The elements of a common law fraud claim are 1) a material misrepresentation of a presently existing or past fact, 2) knowledge or belief by the defendant of its falsity, 3) intent that the other party rely on it, 4) reasonable reliance by the other party, and 5) resulting damages. Triffin v. Automatic Data Processing, Inc., 926 A.2d 362, 368 (N.J. Super. Ct. App. Div. 2007). A common law fraud claim must be plead with particularity under Federal Rule of Civil Procedure 9(b). Fredericko v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Thus, a party claiming fraud must "plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

Plaintiffs' present claim fails as a matter of law. Reduced to its simplest form, Plaintiffs' claim is this: We found a house, which we wanted to buy. We signed a contract to purchase the house contingent on financing. We went to Defendants to get that financing. They gave us exactly what we wanted. They should not have done so.

In effect, Plaintiffs ask the Court to save them from themselves. They ask the Court to

impose a duty on banks to act not as self-interested, adversarial business partners, but to act as paternalistic friends, who will tell borrowers when they risk peril.  This is not the state of the law in New Jersey.  See United Jersey Bank v. Kensey, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997) ("There is, therefore, a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." (quotations omitted)); see also Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47, 53 (3d Cir. 1988) ("It ordinarily would be anomalous to require a lender to act as a fiduciary for interests on the opposite side of the negotiating table." (quotations omitted)); Globe Motor Car Company v. First Fid. Bank, N.A., 641 A.2d 1136, 1138-39 (N.J. Super. Ct. Law Div. 1993) (citing Paradise Hotel), aff'd, 677 A.2d 794 (N.J. Super. Ct. App. Div. 1996).

    But as could rightly be pointed out, this case is not about duties of care, but about intentional fraud.  Plaintiffs' claim fails not because Defendants lacked a duty; it fails because even if they misrepresented to the debt-to-income, or the home appraisal, or even if they side-stepped their own internal controls to approve this loan, the *only* representation they made was that Plaintiffs could have the money they requested.  See Amd. Compl. at ¶ 11.  And this was not a misrepresentation.  Plaintiffs were indeed permitted by the Defendants to receive the funds, which they accepted.  Plaintiffs are not now complaining about misrepresented terms (e.g., the percentage rate or the period of payment), but about the mere process by which they were approved for what they asked for.  Importantly, Defendants did not come to Plaintiffs suggesting Defendants had a home that was worth a certain amount and that Plaintiffs were qualified to buy it–Plaintiffs came to *them* making those representations.  Defendants merely told them they were right, which was at Defendants' peril (not the Plaintiffs').  Cf. Phillips v. MERS Mortg. Elec.

Registration Sys., No. 09-1028, 2009 WL 3233865, at *4 (E.D. Cal. Oct. 2, 2009) (holding lender's determination of creditworthiness and ability to repay are for the protection of the lender).

Furthermore, the claim fails because Plaintiffs did not reasonably rely on whatever misrepresentations Defendants may have made.  As Defendants astutely point out, "it strains credulity to argue . . . that Plaintiffs' own income or expenses could be misrepresented to them."  Def. reply at 12.  This information was equally in Plaintiffs' control, if not more so.  See Int'l Minerals & Mining Corp. v. Citicorp N. Am., Inc., 736 F. Supp. 587, 598 (D.N.J. 1990) (finding reliance unreasonable where parties knew that representation could not be true); cf. Johnson v. Washington, 559 F.3d 238, 245 (4th Cir. 2009) (holding no fraud claim in home sale where the documents plaintiffs received "plainly stated the terms of the transaction").  Plaintiffs do not allege that they were hoodwinked into not looking at the loan documents or otherwise prevented from reading and understanding their own financial information.  Moreover, to the extent the appraisal was wrong or manipulated, Plaintiffs did not rely on it because they came to Defendants claiming the house was worth what they requested, not the other way around.  The appraisal facilitated giving Plaintiffs exactly what they asked for; it did not induce them to ask.  Therefore, Plaintiffs' fraud claim fails as a matter of law and the Court grants Defendants' Motion to Dismiss as to Count Two.

      2.      **NJCFA**

The Court must reach the same result as to Count Three.  To state a claim under the NJCFA, a plaintiff must show (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the unlawful conduct and the

8

ascertainable loss. Deutsche Bank Nat. Trust Co. v. Lacapria, No. 08-2174, 2010 WL 715617, at *5 (D.N.J. Mar. 1, 2010). Because Plaintiffs have failed to state a claim for fraud, which is the predicate for Count Three, they have also failed to state a NJCFA claim. Cf. Int'l Minerals, 736 F. Supp. at 599 (holding NJCFA claim failed where underlying common law fraud claim failed). Therefore, the Court grants Defendants' Motion to Dismiss as to Count Three.

### 3. "Detrimental Reliance"

The same result extends to Count Four where Plaintiffs allege "detrimental reliance." Defendants characterize this claim as one for equitable estoppel. Def. br. at 21, which Plaintiffs do not challenge. In a claim for equitable estoppel "the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment." Miller v. Miller, 478 A.2d 351, 355 (N.J. 1984). Importantly, only reasonable reliance supports an equitable estoppel claim. Gen. Accident Ins. Co. v. New York Marine & Gen. Ins. Co., 727 A.2d 1050, 1055 (N.J. Super. Ct. App. Div. 1999). As discussed above, Plaintiffs cannot satisfy these elements because their reliance was not reasonable under the facts alleged (to the extent any misrepresentations indeed exist). Therefore, the Court grants Defendants' Motion to Dismiss as to Count Four.

### 4. Conversion

Plaintiffs' claim for conversion in Count One also fails. Conversion is "'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" LaPlace v.

Briere, 962 A.2d 1139, 1144-45 (N.J. Super. Ct. App. Div. 2009) (quoting Barco Auto Leasing Corp. v. Holt, 548 A.2d 1161, 1164-65 (N.J. Super. Ct. App. Div. 2009)), cert. denied, 970 A.2d 1049 (N.J. 2009).  Money can be converted.  Chicago Title Ins. Co. v. Ellis, 978 A.2d 281, 287 (N.J. Super. Ct. App. Div. 2009), cert. denied, 983 A.2d 1113 (N.J. 2009).  Plaintiffs have not shown that Defendants' possession of Plaintiffs' money was unauthorized, instead it seems as if Defendants rightfully obtained it pursuant to an agreement.  To the extent Plaintiffs' conversion claim is based on fraud, see Restatement (Second) of Torts §§ 221, 223 (1965) (holding dispossession by fraud supports conversion), the claim fails for the reasons discussed above.  Therefore, the Court grants Defendants' Motion to Dismiss as to Count One.

**B.    RICO**

Finally, Plaintiffs have failed to state a RICO claim.  Defendants argue that the Court should dismiss the claims under 18 U.S.C. § 1962(a), (c), and (d) for many reasons, including 1) failure to allege that any Defendant received money from a racketeering activity; 2) failure to allege distinct injury from the use or investment of income (as is necessary to a § 1962(a) claim); 3) failure to allege the existence of a RICO enterprise; 4) failure to allege that any Defendant operated or managed the alleged enterprise; 5) failure to plead the predicate acts of mail and wire fraud; and 6) failure to plead a pattern of racketeering activity.  See Def. br. at 7-13.  Plaintiffs in response seemingly agree that the Amended Complaint fails to state a claim, but they seek leave to remedy its shortcomings.  See Pl. br. at 29 ("Plaintiffs ask leave of the Court to file a Second Amended Complaint with respect to CLAIM FIVE to set out more adequately the legal basis for such claims.").

Given that the parties are seemingly in accord that the RICO claims are insufficient as

presently stated, the Court is compelled to forgo a detailed analysis at this time and grant the Motion to Dismiss. Moreover, even if the parties were not in agreement, Defendants' Motion would be justified since the fraud undergirding Plaintiffs' claim fails for the reasons discussed above. Therefore, the Court grants Defendants' Motion to Dismiss as to Count Five.

### C. Leave to Amend

As noted, Plaintiffs have sought leave to amend the RICO claim in Count Five, see Pl. br. at 29, which Defendants oppose. See Def. reply at 14-15. Plaintiffs did not seek leave to amend any other count. Plaintiffs also did not attach a proposed Second Amended Complaint. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[W]e have held that a failure to submit a draft amended complaint is fatal to a request for leave to amend."). Notwithstanding, the Court is inclined to grant Plaintiffs leave to amend the Amended Complaint to allege additional circumstances that might support fraud. Such leave is in the interests of justice, Fed. R. Civ. P. 15(a)(2). Plaintiffs are therefore granted leave to amend the Amended Complaint within thirty days. However, pursuant to Local Civil Rule 16.1(b)(4) and Appendix O, the Court will require that Plaintiffs also file a RICO Case Statement to fully illuminate their RICO claims (if they choose to re-allege them), consistent with Federal Rules of Civil Procedure 9(b) and 11. See Lum v. Bank of America, 361 F.3d 217, 220 (3d Cir. 2004) (holding RICO claim based on mail and wire fraud must be pled with particularity under Rule 9(b)); L. Civ. R., Appendix O (text of RICO Case Statement explaining that facts supplied show that plaintiff has made "reasonable inquiry" as required by Fed. R. Civ. P. 11).

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED WITHOUT**

**PREJUDICE** and Plaintiffs are **GRANTED** leave to amend within thirty days. An appropriate

Order shall follow.


Date: 4-22-10 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge